UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMEN RODRIGUEZ RASCON, | No. 1:25-cv-1787 AC |
| Petitioner, | |
| v. | ORDER |
| TODD LYONS, et al., | |
| Respondents. | |

Petitioner, an immigration detainee proceeding through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Currently before the court are petitioner's motion for an order to show cause (ECF No. 2) and motion for a temporary restraining order (ECF No. 6). Respondents have filed a combined opposition to the motion for a temporary restraining order and answer to the petition in which they also request a stay of the proceedings pending the outcome of the appeal in Rodriguez Vazquez v. Bostock, 779 F. Supp. 3d 1239 (W.D. Wash. 2025). ECF No. 13. Petitioner opposes a stay. ECF No. 14 at 8.

I.  Factual and Procedural Background

Petitioner fled his native country, Mexico, due to threats of an unspecified nature. ECF No. at 6-1 at 2, ¶ 3. He was paroled into the United States on April 12, 2024, and he has lived in the country since that time. ECF No. 6 at 8-9. Upon a determination that he was neither a danger to the community or a flight risk, petitioner was released with a Notice to Appear with a first

immigration hearing date of March 4, 2026.  Id.  While released, petitioner was to comply with scheduled check-ins with Immigration and Customs Enforcement (ICE) and never missed an appointment.  Id. at 9.  On November 12, 2025, petitioner was arrested without a warrant after being stopped at a convenience store on his way to work and has been in detention since.  Id. at 8-9.  Petitioner has not been afforded a pre-detention hearing or a custody re-determination hearing.  Id.

On July 8, 2025, the Department of Homeland Security (DHS) issued guidance classifying petitioner under section 235 of the Immigration and Naturalization Act (INA) (8 U.S.C. § 1225) as an "applicant for admission" and therefore subject to mandatory detention.  ECF No. 1 at 6.  Petitioner asserts that he is being illegally subjected to § 1225's mandatory detention policy because 8 U.S.C. § 1226(a), which provides broad discretion for release or detention rather than mandating detention, applies to noncitizens already present in the United States.  ECF No. 6 at 11-12.

On September 5, 2025, the Board of Immigration Appeals issued a binding decision that immigration judges have no authority to consider bond requests for any person who entered the United States without admission because they are subject to mandatory detention under § 1225(b)(2)(A).  See Matter of Yajure Hurtado, 291 I. & N. Dec. 216, 225 (BIA 2025).

On December 9, 2025, petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging his detention by the DHS.  ECF No. 1.  The petition asserts two claims for relief.  First, petitioner asserts that he has been re-detained and denied a bond hearing under § 1225.  ECF No. 1 at 6.  This appears to be a claim that the application of § 1225 violates the Immigration and Naturalization Act (INA) because it does not apply to individuals like him.[1]  Id. at 2, 5-6.  Second, petitioner argues that he has a fundamental liberty interest in remaining free from restraint and that his detention without a bond re-determination hearing to determine whether there has been a change in circumstances violates his right to due process.  Id. at 6.  On

---

[1] This claim is articulated with more clarity as part of the due process argument in the motion for a temporary restraining order (ECF No. 6 at 11-12) but is sufficiently identified as a separate claim in the petition (ECF No. 1 at 2, 6).

2

December 16, 2025, petitioner filed a motion seeking a temporary restraining order in which he requested that respondents be required to immediately release him from custody and be enjoined from re-detaining him without a pre-deprivation hearing.  ECF No. 6 at 8-9.  Respondents have opposed the motion for a temporary restraining order.[2]  ECF No. 13.

II.     Motion for a Temporary Restraining Order

      A.     Legal Standard for a Temporary Restraining Order

The standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary injunction.  Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001) (stating that the analysis for temporary restraining orders and preliminary injunctions is "substantially identical").  To obtain either form of injunctive relief, the moving party must show: "[(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (citations omitted).  "Likelihood of success on the merits 'is the most important' Winter factor."  Disney Enters., Inc. v. VidAngel, Inc., 869 F.3d 848, 856 (9th Cir. 2017) (quoting Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015)).  However, a party seeking injunctive relief must make a showing on all four prongs of the Winter factors to obtain injunctive relief.  All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).

////

---

[2] As part of their opposition, respondents argue that petitioner should be required to exhaust administrative remedies.  ECF No. 13 at 5-7.  Administrative exhaustion is not statutorily required by § 2241 itself.  Laing v. Ashcroft, 370 F.3d 994, 997 (9th Cir. 2004) (quoting Castro-Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir. 2001)).  However, "[a]s a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241," though this requirement can be waived.  Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) (citation omitted).  Exhaustion can be waived where "pursuit of administrative remedies would be a futile gesture."  Liang, 370 F.3d at 1000 (quoting SEC v. G.C. George Sec., Inc., 637 F.2d 685, 688 (9th Cir. 1981)).  The undersigned finds that exhaustion in this case is waived because "pursuit of administrative remedies would almost certainly be futile given the BIA's recent holding that all noncitizens detained in the United States without admission are 'seeking admission' for purposes of 8 U.S.C. § 1225(b)(2)(A) and must be detained."  Singh v. Andrews, No. 1:25-cv-1543 DJC SCR, 2025 WL 3523057, at *2 (E.D. Cal. Dec. 9, 2025) (citing Matter of Yajure Hurtado, 291 I. & N. Dec. 216 (BIA 2025)).

B. <u>Discussion</u>[3]

    i. <u>Likelihood of Success on the Merits</u>

        a. <u>Violation of the INA</u>

Petitioner argues likelihood of success on the merits only as to his due process claim. ECF No. 6 at 10-12. However, subsumed within that argument is a claim that his detention violates the INA because he is subject to § 1226, not § 1225(b)(2). <u>Id.</u> at 11-12. Because petitioner's due process argument relies in part on which section is applicable to him, the court will address this issue first. With respect to the authority for petitioner's detention, the parties dispute whether petitioner is subject to § 1226, as petitioner claims, or § 1225(b)(2), as the respondents claim. The central question in resolving this dispute, as in an overwhelming number of other cases currently proceeding in this court, is whether petitioner is an applicant "seeking admission."

Section 1225(b)(2)(A) mandates detention "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." An "applicant for admission" is defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the

////

---

[3] In ordering a response to the motion for temporary restraining order, respondents were directed to "SHOW CAUSE as to whether there are any factual or legal issues in this case that render it distinct from the Court's prior orders in [<u>Lopez v. Lyons</u>, No. 2:25-cv-03174-DJC-CKD; <u>Singh v. Andrews</u>, No. 1:25-cv-01543-DJC-SCR; <u>Mariagua v. Chestnut</u>, No. 1:25-cv-01744-DJC-CSK; <u>Ortega v. Noem</u>, No. 1:25-cv-01663-DJC-CKD; <u>Souza v. Robbins</u>, No. 1:25-cv-01597-DJC-JDP] and would justify denial of Preliminary Injunction." ECF No. 7. With the exception of <u>Lopez</u>, which petitioner asserts is distinguishable because it involved a U-visa and detention under § 1225(b)(1), the opposition does not identify any provision of law or fact in this case that would substantively distinguish it from these cases. ECF No. 13 at 1-2. Instead, respondents acknowledge that "[t]he legal issues raised in those cases identified by the Court appear similar to those present here" and that petitioner "appears similarly situated" to the other petitioners. <u>Id.</u> They argue that the referenced cases were "wrongly decided" and that there is not yet any precedential guidance on the issues. <u>Id.</u> Respondents' admission alone is sufficient to establish entitlement to relief on the same grounds and based on the same reasoning articulated in <u>Singh</u>, <u>Mariagua</u>, <u>Ortega</u>, and <u>Souza</u>.

4

United States after having been interdicted in international or United States waters).” 8 U.S.C. § 1225(a)(1).

Section 1226, on the other hand, "provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal" and, under subsection (a), the government has broad discretion to detain or release. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing Jennings v. Rodriguez, 583 U.S. 281, 288 (2018)). It also provides that "a detainee may request a bond hearing before an IJ at any time before a removal order becomes final" and "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." Id. at 1197 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19). "Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation." Salcedo Aceros v. Kaiser, No. 25-cv-06924 EMC, 2025 WL 2637503, at *3 (N.D. Cal. Sep. 12, 2025).

In this case, petitioner argues because he was already present in the country, § 1226(a) applies to him, entitling him to the procedures for re-detention it requires. ECF No. 6 at 11. Respondents argue that petitioner is properly detained under § 1225(b)(2) but do not offer a basis for his detention under § 1225(b)(2) other than DHS's new statutory interpretation that this provision applies broadly to all noncitizens, including petitioner, who are present in the United States and have not been admitted. ECF No. 13 at 3-4, 7-8. In fact, respondents conceded that "the government previously interpreted 8 U.S.C. § 1226(a) as available to those in Petitioner's position," but assert any such reference to that provision in relation to his release "was legal error." Id. at 8 n.3.

The legal arguments relied upon by the government have been rejected by the vast majority of the district courts across the country to have considered them.

> By a recent count, the central issue in this case—the administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in

5

350 of those cases decided by over 160 different judges sitting in
about fifty different courts spread across the United States.

Barco Mercado v. Francis, No. 25-cv-6582 LAK, __ F. Supp. 3d __, 2025 WL 3295903, at *4 & App'x A (S.D.N.Y. Nov. 26, 2025) (collecting cases); Contreras-Cervantes v. Raycraft, No. 2:25-cv-13073, 2025 WL 2952796, at *8 & n.4 (E.D. Mich. Oct. 17, 2025) ("There can be no genuine dispute that Section 1226(a), and not Section 1225(b)(2)(A), applies to a noncitizen who has resided in this country, irrespective of the length of time, having been apprehended and arrested within the border of the United States. The reading of the statutes supports this finding, as does every other Court that has had to address the distinction between Section 1225(b)(2)(A) and Section 1226(a).") (collecting cases). "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [petitioner], living in the interior of the country." Salcedo Aceros, 2025 WL 2637503, at *8 (collecting cases); see also Lepe v. Andrews, No. 1:25-cv-1163 KES SKO, __ F. Supp. 3d __, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) ("The government's proposed interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice.") (collecting cases).

The undersigned agrees with the well-reasoned and persuasive decisions by the overwhelming majority of courts which have addressed this issue, and rejects the government's new interpretation of § 1225 as the applicable immigration detention authority for all inadmissible noncitizens. Like the courts cited above, the undersigned finds that § 1226(a), rather than § 1225(b)(2)(A), applies to a non-citizen such as petitioner who is already living in the United States.

For these reasons, petitioner is likely to succeed on the merits of his claim that respondents have violated the INA by improperly subjected him to mandatory detention under § 1225(b).

b. Due Process

Petitioner also argues that his re-detention and continued and indeterminate detention violates due process. ECF No. 6 at 10-14. Respondent argues that because petitioner is a noncitizen "seeking admission" he is subject to mandatory detention under § 1225(b)(2) and therefore not entitled to any process. ECF No. 12 at 7-10.

Petitioner argues that he has a substantial liberty interest based on his parole into the United States in 2024, and that a change in circumstances is required before re-arrest. ECF No. 6 at 10. Respondents do not explicitly address whether petitioner has a liberty interest but imply that he has no liberty interest because he is a noncitizen subject to removal and subject to mandatory detention under § 1225(b)(2). ECF No. 13 at 8-10. The undersigned rejects this argument for the reasons set forth above and agrees with petitioner.

The Due Process Clause protects persons in the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001) (citations omitted). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. "[E]ven when an initial decision to detain or release an individual is discretionary, the government's subsequent release of the individual from custody creates 'an implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." Calderon v. Kaiser, No. 25-cv-6695 AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (citing Morrissey v. Brewer, 408 U.S. 471, 482 (1972)). "[T]he fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest." Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019).[4]

---

[4] Several courts have explicitly discussed the discretionary nature of revocation of parole under § 1226, and held that despite such discretion, changed circumstances are necessary in order to revoke parole under § 1226. See Salcedo Aceros, 2025 WL 2637503, at *1 ("DHS may not re-arrest" a noncitizen paroled under § 1226(a), even if revoking parole under § 1226(b), "absent a change in circumstances." (citing Panosyan v. Mayorkas, 854 F. App'x 787, 788 (9th Cir. (continued)

Petitioner asserts that he was paroled into the United States after Customs and Border Patrol processed him and determined that he was neither a danger to the community nor a flight risk, and that he has never missed an ICE appointment while waiting for his immigration court hearing. ECF No. 6 at 9-10. The undersigned therefore finds that petitioner has established a liberty interest in his continued release. Having determined that a liberty interest exists, the court must now examine what process is due. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989) (the court "first asks whether there exists a liberty or property interest which has been interfered with" and then "examines whether the procedures attendant upon that deprivation were constitutionally sufficient").

To determine what process is due, the court considers three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." Rodriguez Diaz, 53 F.4th at 1206.

With respect to the first factor, petitioner has a strong private interest in remaining free from detention. As discussed above, he was paroled into the country after it was determined he was not a safety or flight risk, he has not missed any of his appointments, there is no indication that petitioner has not cooperated with immigration authorities during his release, and petitioner has been released in the community for more than a year and a half before he was re-detained.

---

2021))); see also Kerry-Juma v. Noem, No. SAG-25-04000, 2025 WL 3537525, at *2 (D. Md. Dec. 10, 2025) (citing Luna Sanchez v. Bondi, Civ. No. 25-cv-018888 MSN IDD, 2025 WL 3191922 (E.D. Va. Nov. 14, 2025)); J.C.E.P. v. Wofford, No. 1:25-cv-1559 EFB, 2025 WL 3268273, at *5 (E.D. Cal. Nov. 24, 2025); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017) (where the decision to release a noncitizen under § 1226(a) is made by a DHS officer, not an immigration judge, the government's practice has been to require a showing of changed circumstances before re-arrest), aff'd sub nom., Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018).

This factor therefore weighs in petitioner's favor.

The second factor, the risk of erroneous deprivation, also weighs in petitioner's favor. Considering that petitioner has been provided no process, the risk of erroneous deprivation is high, particularly in light of the fact that respondents do not argue or present any evidence that petitioner presents a danger to the community or a flight risk. See A.E. v. Andrews, No. 25-cv-0107 KES SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [a petitioner's] interest is high where [h]e has not received any bond or custody redetermination hearing[.]" (alterations in original) (citation and internal quotation marks omitted)); R.D.T.M. v. Wofford, No. 1:25-cv-01141 KES SKO, 2025 WL 2617255, at *6 (E.D. Cal. Sept 9, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." (alteration in original) (citations omitted)).

Finally, while the government has an interest in enforcing its immigration laws, "its interest in detaining petitioner without a hearing is 'low' and custody hearings in immigration court "are routine and impose a 'minimal' cost." R.T.D.M., 2025 WL 2617255, at *6 (citing Ortega, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

For these reasons, the court finds that the government's interest in detaining petitioner without a hearing is low and does not outweigh petitioner's substantial liberty interest or the high risk of erroneous deprivation of liberty. Therefore, the court finds that petitioner has established a likelihood of success on the merits of his due process claim.

### B. Irreparable Harm

"[U]nlawful detention certainly constitutes 'extreme or very serious' damage, and that damage is not compensable in damages." Hernandez v. Sessions, 872 F.3d 976, 999 (9th Cir. 2017). Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1979)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." Warsoldier v. Woodford, 418 F.3d 989, 1001-02 (9th Cir. 2005) (quoting 11A

Wright & Miller's Federal Practice & Procedure § 2948.1 (2d ed. 2004); Arevalo v. Hennessy, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm." (citation omitted)).  This factor therefore weighs in petitioner's favor.

### C. Balance of the Equities and Public Interest

Finally, "[w]hen the government is a party, the last two factors (equities and public interest) merge." E. Bay Sanctuary Covenant v. Biden, 993 F.3d 640, 668 (9th Cir. 2021) (citing Nken v. Holder, 556 U.S. 418, 435 (2009)).  As addressed above, petitioner is likely to success in proving that respondents have violated federal laws and deprived him of his constitutional rights. "[The government] cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." Rodriguez v. Robbins, 715 F.3d 1127, 1145 (9th Cir. 2013); Zepeda v. U.S. Immigr. & Naturalization Serv., 753 F.2d 719, 727 (9th Cir. 1983) ("[T]he INS cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations.").

### D. Bond

Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." However, "[d]espite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis in original) (some internal quotation marks omitted) (quoting Jorgensen v. Cassiday, 320 F.3d 909, 919 (9th Cir. 2003)). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." Jorgensen, 320 F.3d at 919 (citing Barahona-Gomez v. Reno, 167 F.3d 1228, 1237 (9th Cir. 1999)).

Neither party has addressed the issue of security in this case and the court finds no security required here as courts regularly waive security in cases like this one. See, e.g., Zakzouk v. Becerra, No. 25-cv-6254 KAW, 2025 WL 2899220, at *8 (N.D. Cal. Oct. 10, 2025) (collecting cases).

III.   Motion for an Order to Show Cause

Petitioner has moved for an order to show cause why the petition should not be granted, returnable within five days, and an order directing petitioner's immediate release. ECF No. 2. Because respondents have answered the petition and the undersigned is ordering petitioner's immediate release, the motion will be denied as moot. The petition will be further adjudicated in due course.

IV.   Request for a Stay of Proceedings

In their answer to the petition and opposition to the motion for temporary restraining order, respondents request that these proceedings be held in abeyance pending the outcome of the appeal in Rodriguez Vazquez v. Bostock, 779 F. Supp. 3d 1239 (W.D. Wash. 2025). ECF No. 13 at 4. They assert that the appeal raises the same issue regarding the application of § 1225 versus § 1226 and is set for oral argument in February 2026. Id. Petitioner opposes the request, arguing that he will suffer irreparable harm in the absence of preliminary relief. ECF No. 14 at 8.

As addressed above, the court finds that, as the law currently stands, petitioner has demonstrated a likelihood of success on the merits and the irreparable harm he will suffer in the absence of relief is substantial. In these circumstances, the court will not delay preliminary injunctive relief because a pending appeal *may* change petitioner's likelihood of success. However, because the pending appeal in Rodriguez Vazquez has the potential to be dispositive of the issues in this case, the court will consider staying consideration of the merits of the petition. Although petitioner stated that he opposed the stay due to the irreparable harm he would suffer absent preliminary relief, such relief is being granted by this order. In light of this order granting petitioner's immediate release, he will be required to address whether he opposes a stay of the consideration of his petition pending the outcome of the appeal in Rodriguez Vazquez.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's motion for temporary restraining order (ECF No. 6) is GRANTED.

2. Respondents must IMMEDIATELY RELEASE petitioner Carmen Rodrigeuz Rascon from custody under the same conditions of release to which he was subject prior to his November

12, 2025, detention. Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.

3. Within four days of the date of this order, respondents shall file a status report confirming petitioner's release.

4. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to 8 U.S.C. § 1226(a) and its implementing regulations, at which petitioner's eligibility for bond must be considered. At any such hearing, petitioner shall be allowed to have his counsel present.

5. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.

6. Respondents are ORDERED TO SHOW CAUSE by no later than December 24, 2025, as to why this court should not issue a preliminary injunction on the same terms as this order. Petitioner may file a response thereto by no later than December 29, 2025. If the parties agree upon a less demanding briefing schedule, the court will consider the parties' proposal.

7. Petitioner's motion for an order to show cause (ECF No. 2) is DENIED as moot.

8. Within fourteen days, petitioner shall notify the court whether he opposes a stay the petition pending the outcome of the appeal in <u>Rodriguez Vazquez</u> and, if so, on what grounds.

DATED: December 22, 2025

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE